## NORRIS ACT NOT UNCONSTITUTIONAL AS INHIBITING CONTRACT GUARANTIES.

Circuit Court of Cuyahoga County.

THE FATH CONSTRUCTION COMPANY v. CATHERINE BAUSMERTH ET AL.

Decided, December 16, 1911.

*Constitutional Law—Norris Law Does Not Inhibit Contract Guaranties —But Abrogates the Rule of Pleading Negativing Plaintiff's Negligence—Administrator Proper Party to Bring Action for Wrongful Death Under Norris Act—Certificate of Trial Judge that Defendant Conceded Representative Character of Plaintiff in Wrongful Death Action Conclusive—Plank Platform Used as Means of Access to Work on Building in Construction Held "Way" in Norris Law.*

1. The Norris act (101 O. L., 195), amending General Code, 6242-6245, making defects in appliances and ways *prima facie* evidence of employers' negligence, and abrogating the doctrine of assumption of risk by employes as to such defects, does not violate any constitutional guaranties as to right to contract.

2. Act 101 O. L., 195, the Norris law, amending General Code, 6245, and modifying the rule of assumption of risk of employes as to certain defects in appliances and place of work, abrogates the rule of pleading as to denial of knowledge, actual or constructive, of defects causing the injury alleged.

3. Act 101 O. L., 195, amending General Code, 6242-6245, 10770, 10772, and modifying the law regulating the liability of employers for injuries to employes, applies to actions for injuries by an employe himself and by his administrator if he fails to survive the injury incurred.

4. A certificate by a trial judge in an action for death by wrongful act, that the fact · of the representative character of plaintiff as administrator of a deceased employe was conceded by defendants, is conclusive; therefore, failure to prove such fact is not ground for reversal.

5. The term "way" in General Code, 6245, as amended by act 101 O. L., 195, designating the objects for defects in which an injured employe may recover, is not limited to a "permanent way"; hence, a platform of planks placed upon supporting beams of a building in process of construction and used for hoisting materials and as a

means of access by employes to work on its walls, etc., constitutes a "way" or "appliance" within the meaning of such act. *Mason v. Ferguson*, 12 C.C.(N.S.), 567, denied.

*Ford, Snyder & Tilden*, for plaintiff in error.
*Kerruish & Kerruish*, contra.

WINCH, J.; MARVIN, J., and HENRY, J., concur.

This was an action for wrongful death, under the Norris law, so-called, with verdict for the plaintiff below in the sum of $6,-000, which the court reduced to $4,000, entering judgment in the latter sum, the plaintiffs consenting to the remittitur.

· At and before the time of the accident the deceased, Thomas Bausmerth, was working for the construction company in the erection of the Lorain Avenue Branch Library on the west side, in the city of Cleveland, for which erection the company had a contract. As the work progressed, certain steel I-beams were extended across the north wing of said building at a height of about twenty-five feet above the ground, to form the framework of the ceiling of the rooms below and the roof of said wing. These I-beams were placed at regular intervals of eight feet and six inches apart.

Some twelve or fifteen days before September 9, 1910, the day on which Bausmerth received his fatal injury, he and other workmen were directed by the foreman on the job to construct a scaffold, platform, staging or flooring upon said I-beams, and for this purpose were furnished planks sixteen feet long. The foreman superintended the construction of the platform, and it was so laid that the ends of the planks overlapped between the second and third I-beams, counting from the north wall. In this condition the platform was unsafe, for a weight superimposed upon these overlapping ends between the second and third I-beams would cause the planks to tip down and drop the weight, through. This danger, however, was obviated by erecting a heavy derrick over the north end of the north row of planks and immediately over I-beam number one, the supporting timbers of, the derrick extending east and west across said planks and timbers being spiked on top of and cross-wise of said planks, one

on either side of and against the supporting timbers of the derrick.    The derrick was used for hoisting up material from the outside of the building.

On the day in question, the walls of this wing being complete, except the laying of a few coping stones, the foreman had said derrick removed and the timbers spiked to the planks torn up. This left a defective condition of the platform, for the overlapping plank ends between I-beams two and three would not now sustain any heavy weight.

The petition contains the following allegation:

"Plaintiffs say that said platform, scaffold, staging or flooring, constructed as hereinbefore described and for the purpose aforesaid and constituting a part of the ways, works, plant and appliances which were connected with and used in the business of the defendant, was negligently, carelessly and unlawfully left by said defendant in a weakened, defective and unsafe condition as aforesaid, which said weakened, defective and unsafe condition was fully known, observed and understood by said defendant through its foreman, Koenig, but wholly unknown, unnoticed and uncomprehended by said decedent.

"Plaintiffs say that shortly after said platform had been converted from a safe into a dangerous place, as aforesaid, to-wit, at about 12:30 P. M. on the said 9 September, 1910, the decedent was expressly ordered and commanded by said foreman, Koenig, to help him and five other of said workmen carry a large coping stone, weighing between 600 and 700 pounds, from the top of a ladder placed against the southerly side of I-beam number four across said platform to said north wall; that in compliance with said express order and command, the said decedent did then and there, with the aid of the six other men, including said foreman, take hold of said stone and lift it and proceeded to carry the said stone across said platform towards said north wall, all the while in the exercise of due care and without negligence on his part and under the express and direct commands and guidance of the said foreman, and had proceeded until he and they had reached a point on said platform directly over the center of the said space between said I-beam numbers two and three, when suddenly and unexpectedly and without warning of any kind to said decedent, said platform gave way by reason of six or seven planks of each said row of planks tipping down because of so great a load imposed upon it, and caused said stone and said decedent together with four other of said men to fall through

said space and down onto said floor I-beams and thence to the ground some thirty (30) feet beneath, so crushing and mangling said decedent that he died from said injuries the following morning.''

It is, perhaps, unnecessary to quote further from the petition.

Several errors are alleged to have occurred at the trial:

First, it is claimed that no evidence should have been received under the petition, because it fails to contain an allegation that the decedent did not have equal means of knowing with the master, or, by the exercise of ordinary care, could not have discovered, the existence of the defect.

As the law stood until the adoption of the Norris law, April 30, 1910 (101 O. L., 195), the petition was defective in this respect. *Coal & Car Co.* v. *Norman,* 49 O. S., 598, 607.

This rule of pleading, however, was abrogated by the act referred to.

Section 6245 of said act provides:

''That in any such action (for personal injuries or wrongful death, as provided in Section 6242) where it shall appear that the injury or death was caused in whole or in part by any of the following, to-wit:  *  *  *  any defective or unsafe condition in the *ways,* works, boats, wharves, plant, machinery, *appliances* or tools, except simple tools, in any way connected with or in any way used in the business of the employer, the fact that such employe continued in said employment with knowledge of such negligent omission or want of care, or such defective or unsafe condition shall not be a defense unless,'' etc.

In conformity with the Norman case, the Legislature might have said, ''It shall not be necessary for the employe to allege in his petition or prove on the trial that he did not continue in said employment with knowledge of such negligent omission or want of care,'' etc., but in common parlance ''assumption of risk,'' and the matter here mentioned comes within the meaning of that expression—has always been spoken of as a defense. Evidently, with this idea in mind, the Legislature said, ''it shall not be a defense.''

The manifest intention of the act was to take out of the case the question of the employe's actual or constructive knowledge

of the defect complained of, and this we believe it does. Whether this part of the act is constitutional or not, will be treated of later in a consideration of the charge.

It is said, however, that the temporary platform or scaffold described in the petition does not come within the meaning of the words "ways, works, boats, wharves, plant, machinery, appliances or tools," as used in the statute, and the case of *Mason v. Ferguson*, 12 C.C.(N.S.), 567, decided by the Hamilton County Circuit Court, sustains this proposition.

We are not in accord with that decision, nor do we think it sustainable upon the authorities therein cited, nor upon reason.

The platform here involved was built and used for the purpose of permitting the workmen to pass, with or without tools and material, from the ladder at its south end to the walls upon which they worked. It was their only means of access to their work on the walls after the I-beams had been placed in position. It was temporary in character, but it was both a *way* and an *appliance connected with and used in the business of the employer*, and was no more temporary in character than his business, which was ended on this job when the walls were completed, at which time the platform would be removed.

The Century Dictionary defines "ways" as, "The track or path by passing over or along which some place has been or may be reached; a course leading from one place to another"; and it defines "appliance" as: "Something applied as a means to an end, either independently or subordinately; that which is adapted to the accomplishment of a purpose; an instrumental means, aid, or appurtenance."

The act in question must be construed with these definitions in mind, and the ordinary and usual meaning given to the words employed by the Legislature. There is no necessity of limiting the meaning of the word "way" to a permanent way; even strict construction does not require that to be done.

The object of the act was clearly to alter the law in favor of workmen and to extend the liabilities of the employer, and this object is effectuated by a fair construction of the words used in it. It is also remedial in its nature, and therefore should have a liberal construction.

It is next said that a verdict should have been directed for the defendant below, because the plaintiffs failed to prove that they were the administrators of the estate of the deceased employe.

The trial judge certifies that this fact was conceded by the defendant company at the trial, and his certificate is conclusive upon this point.

Many rulings on the admission of evidence are complained of, all of which have been examined, but no erroneous rulings have been found which were prejudicial to the rights of plaintiff in error.

The judgment is not excessive.

The verdict was sustained by the evidence.

The charge is complained of, but only in so far as it gave the pertinent part of the Norris act as the law of the case.

As before stated, the platform or scaffold described to the jury in the evidence was a way or appliance, and the court properly so charged.

It is said, however, that the court improperly charged the law as stated in Section 6243 of the act as applicable to a death case. That section reads:

"That if the employe of any such employer shall receive any personal injury by reason of any defect or unsafe condition in any ways, works, etc., such employer shall be deemed to have had knowledge of such defect, before and at the time such injury was sustained, and when the fact of such defect shall be made to appear upon trial of an action brought by such employe *or his personal or legal representatives*, against any such employer for damages, on account of such injuries so received, the same shall be *prima facie* evidence of neglect on the part of such employer; but the employer may show by way of defense that such defect was not discoverable in the exercise of ordinary care."

It is claimed that the words "or his personal or legal representatives" do not necessarily refer to the administrator suing for the benefit of the beneficiaries named in Section 10772 of the act, but *may* have reference to an administrator suing for personal injuries for the benefit of the estate of the deceased employe, he having survived his injuries and having subsequently died from some other cause.

A study of the preceding and subsequent sections of the act shows that this technical objection is not well taken. The purpose of the act is clearly shown to be to modify the law regulating the liability of the employer for injuries to his employe received by reason of defects of the kind enumerated, both in cases where the employe survives his injuries, and himself sues, and where he dies of his injuries and an action for death from wrongful act is brought by his personal or legal representatives. The sections authorizing the latter act are amended and, as amended, incorporated in the Norris act; they are referred to throughout the entire act in such manner as to make this point clear.

Besides, it would be a work of supererogation for the Legislature, with the limitations claimed, to extend the benefit of Section 6243 to an action brought by the employe's personal representative, after having granted it to the employe, for such personal representative would have all the benefits of the law which his decedent would have had. *Such* action, with all its incidents, survives at common law.

It is claimed by counsel for plaintiff in error that Sections 6243 and 6245 of the Norris act, which were charged in this case, are unconstitutional. The former section makes evidence of a defect in the ways and appliance *prima facie* evidence of neglect on the part of the employer, and the latter section says that the fact that the employe continued in his employment with knowledge of the defect is no defense to the action.

It is said that substantial rights of employers, guaranteed them by the Constitution, are taken away from them by these sections.

Such might have been said of the act of 1851 (59 O. L., 117), entitled, "An act requiring compensation for causing death by wrongful act, neglect, or default," but its constitutionality was never questioned.

The same act, amended so as to make the incidents of Sections 6243 and 6245 a part of it, is found in the Norris act. Of the original enactment, Judge McIlvaine said, in the case of *Davis* v. *Justice*, 31 O. S., 359, 363:

''Before the passage of this statute, an action for pecuniary loss, resulting from the death of a human being, was unknown in our practice, and ever since, the only suits for such loss have been prosecuted under its provisions. The statute has always been regarded as an innovation upon the principles of the common law, and as affording the only civil remedy for an injury caused by death.''

We have many other constitutional statutes which define wrongs and create rights unknown to the common law. It is to the credit of the law that such is the case; it should keep pace with the times, the development of civilization and enlightened modern thought.

The rule adopted in the Norman case, requiring the employe to assume all the hazards of his employment, apparent or open to his investigation, had its origin less than a hundred years ago, and was based upon the relation of master and servant then existing, the two working together at the same bench, both equally cognizant of all the dangers incident to the employment. Since that time the factory system has grown up, business is done on a larger scale; by the introduction of new motive power and machinery the dangers surrounding workmen have been largely increased, but the law has left the burden of all these dangers upon the workmen. The law has not developed with the times. Courts and lawyers, as well as the public generally, have come to the opinion that these harsh rules of the common law should be abolished and rules more humane and in accord with modern conditions adopted. This thought, to a certain extent, has crystalized in the Norris act and other legislation recently enacted.

The Norman case could have been overruled by the Supreme Court; instead of that, it has been overruled by the Legislature, which is better. The Legislature can make general rules applicable to all similar cases, promulgated to all the people, while a rule of law adopted by a court is based upon the facts of the particular case before the court, and is apt to be too narrow in its scope and leaves the matter open to further litigation between individuals who seek to distinguish their own cases from the one in which the rule has been laid down. In addition, the decisions of courts are first known only to the legal profession, and but

slowly and gradually reach the people in all their force and effect.

Nothing in the Norris law, which invades the constitutional rights of employers, has been called to our attention. It is true that it modifies the contract which formerly was implied from the relation of employer and employe; it defines that contract with some particularity; every employer can hire workmen with the statute in mind; the employer is no more required to hire men than the men are to work for him. If the relation is assumed, it is assumed with the law as part of the contract of employment.

We have examined all complaints with regard to the charge, and find no reversible error in it. It might have been made more concrete and full on some points, but was in no sense misleading. In the absence of special requests for further instructions, a failure to cover all the questions involved in the case is not ground for reversal, provided the jury was not misled by the charge as given. *Railway Co.* v. *Ritter,* 67 O. S., 53.

Judgment affirmed.